UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

**CIVIL ACTION NO. 16-319-DLB**

**HELEN VONLINGER**                                                                    **PLAINTIFF**

vs.                **MEMORANDUM OPINION AND ORDER**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**                         **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

**I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

On October 15, 2012, Plaintiff Helen Vonlinger protectively applied for Disability Insurance Benefits (DIB) payments, alleging disability beginning on February 1, 2013. (Tr. 12). Plaintiff's application was denied initially on September 3, 2013, and again on reconsideration on December 6, 2013. *Id.* At Plaintiff's request, an administrative hearing was conducted on March 17, 2015, before Administrative Law Judge (ALJ) Don C. Paris. *Id.* On April 9, 2015, ALJ Paris issued an unfavorable decision, finding that Plaintiff was not entitled to disability benefits. (Tr. 12-24). The decision became final when the Appeals Council denied Plaintiff's request for review on July 19, 2016. (Tr. 1-7). Plaintiff

1

filed the instant action on August 24, 2016. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 10 & 12).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, a court is required to affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if it might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

To determine disability, the ALJ conducts a five-step analysis. "If, at any step during the process, it is determined that the claimant is or is not disabled, the process is terminated." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 928-29 (6th Cir. 2007).

Step One considers whether the claimant can still perform substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the claimant's impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. With the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

ALJ Paris began the sequential evaluation by determining at Step One that the Plaintiff has not engaged in substantial gainful activity since February 1, 2013, the alleged onset date. (Tr. 14). At Step Two, the ALJ found that the Plaintiff had three "severe" impairments: (1) degenerative disc disease of the lumbar and cervical spine, (2) depressive disorder, and (3) anxiety disorder. *Id.*

At Step Three, the ALJ found that the Plaintiff does not have an impairment, or combination of impairments, listed in or medically equivalent to an impairment in the Listings of Impairments. (Tr. 16 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1)). In doing so, the ALJ determined that the Plaintiff's degenerative disc disease did not satisfy the criteria of Listing 1.04. (Tr. 16). The ALJ further found that Plaintiff did not meet the requirements for mental disorders under Listing 12 because "the claimant did not experience marked limitations in the functional areas" or "[any] episodes of decompensation." (Tr. 17).

At Step Four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work activity with the following additional restrictions:

> [T]he claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently; can stand and walk for six hours in an eight hour workday; sit for six hours in an eight hour workday; pushing and pulling with the upper left extremity is limited to frequently; can frequently climb stairs and ramps; should never climb ladders or ropes; frequently stooping, kneeling, and crouching; never crawling; limited overhead work with the right upper extremity; limited handling with the left hand and left fingers; limited to frequent overhead reaching, handling, and fingering with the left hand due pain and numbness in the left upper extremity; and should avoid concentrated exposure to vibrations and all hazards, such as dangerous machinery. The claimant also has a mental impairment; however, she is able to sustain concentration; and can do tasks within physical tolerations and skill with regular breaks and supervision; has the ability to sustain for extended periods, but should be able to complete simple tasks for six to eight hours in an eight hour period at an appropriate pace and sustain this limit across days and weeks; the claimant can relate and interact appropriately with co-workers; can cooperate with routine changes in task; can accept other workers and accept feedback generally; and the claimant can adapt to modest task demands in a workplace.

(Tr. 17-18). Based on this RFC, the ALJ determined that Plaintiff was unable to perform her past relevant work as a cake decorator, stocking clerk, cashier, or deli worker. (Tr. 22).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step Five, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 23). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. *Id.* The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could perform occupations such as parking lot attendant (500 jobs in Kentucky, 52,000 jobs nationally) and recreational attendant (1,100 jobs in Kentucky, 128,000 jobs nationally). *Id.*

Therefore, the ALJ concluded that Plaintiff is not under a "disability," as defined by the Social Security Act. (Tr. 24).

### C. Analysis of Plaintiff's Arguments

Plaintiff advances five arguments on appeal. (Doc. # 10-1). Plaintiff's first four arguments relate to the weight the ALJ gave to the opinions of various medical and non-medical sources. Plaintiff complains that the ALJ failed to give sufficient weight to the opinions of her treating physician, a non-treating psychologist, and her former manager at Wal-Mart, and that the ALJ gave too much weight to the opinions of the state agency physicians who reviewed her record. *Id.* at 7-11. In addition, Plaintiff argues that the ALJ's RFC and the corresponding hypothetical posed to the VE were ambiguous and failed to incorporate her limitations and therefore cannot support a finding of no disability. *Id.* at 11-14.

#### 1. The ALJ gave "good reasons" for rejecting the opinion of Plaintiff's treating physician.

A treating physician's opinion as to the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). Even if the opinion is not entitled to "controlling weight," there remains a presumption, albeit a rebuttable one, "that the opinion of a treating physician is entitled to great deference." *Id.* In determining how much deference to give to the treating physician's opinion, the ALJ must consider a number of factors, including "the length, frequency, nature, and extent of the treatment relationship; the supportability and

5

consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id.*

The ALJ must also "provide 'good reasons' for discounting treating physicians' opinions." *Rogers*, 486 F.3d at 242. The ALJ's reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This rule ensures that claimants understand the disposition of their case, particularly when their own physician deems them disabled, and also permits meaningful appellate review of the ALJ's decision. *Id.* Thus, even if the ALJ's decision to disregard the treating physician's opinion is supported by the record, the decision may still be reversed if adequate explanation is missing. *Id.*

Plaintiff contends that the ALJ failed to give adequate reasons for discounting the opinion of her treating physician, Dr. Green. (Doc. # 10-1 at 7-11). Dr. Green opined that Plaintiff's pain was severe enough to interfere with her attention and concentration for two-thirds of the day, and that she has a marked limitation in her ability to deal with normal stresses of competitive employment. (Tr. 484-86). Dr. Green also opined that Plaintiff could only stand, sit, and walk for a total of less than two hours in an eight hour workday, and that she could only continuously sit for 30 minutes, stand for 20 minutes, and walk for 30 minutes. (Tr. 487). Further, Dr. Green opined that Plaintiff needs to lie down at will to relieve pain, can lift ten pounds or less occasionally and twenty pounds infrequently, that she has significant limitations in reaching and manipulating her left hand and fingers, that she can bend or twist infrequently, and that she would have to be absent from work due to her medical impairments for at least eight days per month. (Tr. 488-90).

6

Contrary to Plaintiff's argument, the ALJ provided "good reasons" for rejecting Dr. Green's opinions. These "good reasons" are supported by substantial evidence in the record. Although Plaintiff had been treated by Dr. Green for approximately thirty years (Tr. 484), the ALJ explained that he gave Dr. Green's opinions "little weight" because "the medical evidence did not support them." (Tr. 21). More specifically, the ALJ noted that Dr. Green's opinions about Plaintiff's extreme physical limitations were inconsistent with his own treatment notes, which "showed that the claimant retained a normal gait and had at least 4/5 strength in all muscle groups." (Tr. 21, 513; *see also* Tr. 383, 399, 582 (other treatment providers noting Plaintiff's grip strength and normal gait)). In addition, the ALJ relied on neurologist Dr. Brooks's notes from December 2012, which "indicated that the claimant did not have any significant nerve root compression or spinal stenosis." (Tr. 21, 400). Thus, "the ALJ properly declined to accord [the treating physician's] opinion 'controlling weight' because there was substantial contrary evidence in the record." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1000 (6th Cir. 2011).

With respect to Plaintiff's mental capacity, Dr. Green opined that she has poor ability to relate to coworkers, deal with the public, interact with superiors, deal with work stress, maintain concentration, and understand, remember, and carry out complex job instructions. (Tr. 491-93). When explaining why he afforded little weight to Dr. Green's opinions, the ALJ noted that Plaintiff "has not received ongoing therapy or counseling for mental health problems," and that Dr. Green himself "noted on multiple occasions that [Plaintiff] had a grossly normal mental status." (Tr. 20, 337, 379, 383, 525, 532). "These facts suggest that the claimant's mental health impairments are not as severe as alleged because the claimant has been able to function without receiving significant treatment or

7

experiencing advanced symptoms." (Tr. 20). The ALJ went on to explain that the medical evidence showed that claimant "had some memory problems," but "retained good attention span and concentration." (Tr. 20, 556; *but see* Tr. 557 (noting problems with sustained attention)). Again, the ALJ's decision not to accord Dr. Green's opinion controlling weight is supported by substantial evidence in the record.

Plaintiff argues that "Dr. Green's opinions are supported by Dr. Brooks'[s] finding that [Plaintiff] must live with her persistent pain." (Doc. # 10-1 at 9). Plaintiff does not quote from or cite to the record in support of that allegation, but she may be referring to Dr. Brooks's statement that Plaintiff continued to have neck and arm pain despite "no new pathology or nerve root compression noted" in the MRI of her cervical spine. (Tr. 400). However, contrary to Plaintiff's assertions, this statement supports the ALJ's decision because Plaintiff required "[n]o formal follow up from a neurosurgical perspective" and her nerve conduction studies were "within normal limits." *Id.*

Plaintiff also argues that "[t]here is no treating or examining opinion of record that supports" the ALJ's RFC. (Doc. # 10-1 at 9). But such an opinion is not required. In fact, the determination of a claimant's RFC is an issue specifically "reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d). As a result, the ALJ need not base his RFC on a specific medical opinion, including a treating or examining opinion. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Based on the foregoing, the Court finds that the ALJ's rejection of Dr. Green's opinion was permissible and supported by substantial evidence.

## 2. The ALJ properly discounted Dr. Fishkoff's opinion.

The ALJ accorded only limited weight to the opinion of consultative psychological examiner Dr. Fishkoff, a non-treating physician. (Tr. 20-21). Dr. Fishkoff opined that Plaintiff has poor concentration and short-term memory and poor ability to tolerate frustration, conform to social standards, and maintain employment. (Tr. 375). She also opined that Plaintiff's ability to sustain attention to perform simple and repetitive tasks was clinically impaired and that she could not tolerate the stress and pressures associated with day-to-day work activity. *Id.*

The ALJ gave "little weight" to Dr. Fishkoff's opinion because claimant's treatment history and medical records did not suggest that she "received counseling or therapy" or "experienced recurrent exacerbations of advanced symptoms." (Tr. 21). In addition, the treatment notes of neurologists indicated that Plaintiff had good memory, concentration, and attention span. (Tr. 566, 557, 635; *but see* Tr. 582). Further, the ALJ explained that Dr. Fishkoff's assessment was at odds with her own treatment notes about Plaintiff's activities of daily living. (Tr. 21). Specifically, the ALJ noted that Plaintiff "liked to read, watch television, and use a computer to access Facebook." *Id.* In addition, Plaintiff "washed clothes," "did dishes," "played with her grandchildren," "was able to care for her personal hygiene," "performed multiple household chores by working with her husband," and "went grocery shopping once per month." *Id.* The ALJ concluded that these activities of daily living "show that [Plaintiff] had the ability to perform and maintain concentration for multiple tasks as well as interact with others in some contexts," undermining Dr. Fishkoff's broad conclusions to the contrary. *Id.*

Plaintiff complains that the ALJ "failed to explain what part of the opinions were given any amount of weight, and what part of the opinions were not given weight." (Doc. # 10-1 at 10). But the ALJ explained that he gave both Dr. Fishkoff and Dr. Green's opinion "little weight," and gave good reasons to explain why. No more is required. *See* 20 C.F.R. § 404.1527(c); *see also Rogers*, 486 F.3d at 242 (for treating physicians, "good reasons" must be "sufficiently specific" to make clear the weight given to the opinion and "the reasons for that weight"). Therefore, the ALJ's decision to accord Dr. Fishkoff's opinion little weight was supported by substantial evidence and was not error.

### 3. The ALJ properly discounted the testimony of Plaintiff's former manager.

Plaintiff also argues that the ALJ erred in discounting the statements of her former manager at Wal-Mart. (Doc. # 10-1 at 10). The ALJ has discretion to determine how much weight to give the opinion of a non-medical source, and should evaluate that opinion using factors such as how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). The ALJ should also explain the weight given to such opinions so that a claimant or subsequent reviewer can "follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* (quoting Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6). The ALJ did so here. He explained that he gave the opinion of Plaintiff's former manager "little weight" because it lacked the detail and objectivity of medical findings, which suggested that Plaintiff had less significant limitations, and because of the "natural tendency of close family members, friends, and work associates to support the claimant's assertions uncritically." (Tr. 22). *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550-51 (6th Cir.

10

2014) (ALJ properly discounted a non-medical source opinion that he concluded was not supported by the objective record and was undermined by other evidence). The ALJ therefore did not err in his evaluation of the non-medical opinion evidence of Plaintiff's former manager.[1]

### 4. The ALJ did not err in giving greater weight to the opinions of the state agency physicians.

Plaintiff argues that the ALJ erred by according greater weight to the opinions of the state agency physicians, Dr. Sadler and Dr. Hightower, than to Dr. Green and Dr. Fishkoff. This argument is unpersuasive. The ALJ explained his reasoning for giving greater weight to the opinions of Dr. Sadler and Dr. Hightower. He noted that Dr. Sadler's opinion on Plaintiff's physical limitations was consistent with the record as a whole, including the limitations shown in the medical evidence. (Tr. 20). For instance, Dr. Sadler noted the medical evidence of Plaintiff's limitations in her left upper extremity, which the ALJ reflected in his RFC by limiting the use of her left upper extremity and left hand and left fingers. (Tr. 20, 17-18). In addition, Dr. Sadler "accounted for degenerative changes in the claimant's lumbar and cervical spine by restricting the claimant to light exertional work activity and by reducing the amount of posturals performed by the claimant." (Tr. 20). Importantly, the ALJ explained that "[a]dditional reductions [such as those proposed by Dr. Green] were not justified as the medical evidence showed that the claimant retained the ability to ambulate without an assistive device" and "there was no evidence of additional nerve root compression or advanced spinal stenosis." (Tr. 20; *see also* Tr. 400). The ALJ also explained that Dr. Hightower's opinion about Plaintiff's mental

---

1 Plaintiff's former manager ultimately opined that she was "rehirable," which further undermines Plaintiff's claims. (Tr. 222).

11

capacity properly took into account the evidence of her ability to perform activities of daily living that required concentration, attention, and interactions with others. (Tr. 21).

The ALJ's decision to accord greater weight to the opinions of the state agency physicians, rather than the opinions of Drs. Green and Fishkoff, is supported by the record, and the Court finds no error. See *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review. Accordingly, we conclude that the ALJ did not err in assigning greater weight to the opinions of the nonexamining consultants."); *Durrette v. Comm'r of Soc. Sec.*, No. 94-3734, 1995 WL 478723, at *3-4 (6th Cir. 1995) (concluding that it was proper for the ALJ to give greater weight to the reviewing doctors' opinions because the treating physician's opinion was conclusory, not supported by objective evidence, and controverted by other medical opinion testimony).

Plaintiff's claim that the state agency physicians did not have the majority of her records (Doc. # 10-1 at 10) is unpersuasive. The state agency physicians completed their reviews in September and November of 2013. (Tr. 78, 96, 102). Plaintiff does not attempt to explain how her condition deteriorated after that time. The ALJ's reliance is not error.

      **5.**      **The RFC is ambiguous, and the ALJ's determination at Steps Four and Five is not supported by substantial evidence.**

The Plaintiff further claims that the ALJ erred at Step Five because the hypothetical he posed to the VE based on the RFC was ambiguous and that the RFC did not properly take into account all of Plaintiff's limitations. (Doc. # 10-1 at 11-12). According to the hearing transcript, the ALJ posed a drawn-out hypothetical that became ambiguous when the ALJ began to discuss mental impairments:

12

> She also suffers with mental impairments, however she is able to—
> (Pause.)
> —able to sustain concentration. She can pursue a task within physical—
> (Pause.)
> —can proceed with a task within physical tolerations and skill levels for an eight-hour workday with regular breaks and normal levels of supervision, **ability to sustain—**
> **(Pause.)**
> **—for extended periods but should be able to complete simple tasks for six to eight hours in a eight-hour period at appropriate pace and sustain this limit across days and weeks.** Socially she can relate adequately with coworkers, can cooperate with routine tasks, and accept other workers and accept feedback generally—
> (Pause.)
> —can adapt to modest task demands in a work place.

(Tr. 65-66) (emphasis added). The analogous portion of the RFC in the hearing decision stated:

> The claimant also has a mental impairment; however, she is able to sustain concentration; and can do tasks within physical tolerations and skill with regular breaks and supervision; **has the ability to sustain for extended periods, but should be able to complete simple tasks for six to eight hours in an eight hour period at an appropriate pace and sustain this limit across days and weeks**; the claimant can relate and interact appropriately with co-workers; can cooperate with routine changes in task; can accept other workers and accept feedback generally; and the claimant can adapt to modest task demands in a workplace.

(Tr. 18) (emphasis added). In particular, Plaintiff argues that the ALJ's statement about her "ability to sustain [pause] for extended periods but should be able to complete simple tasks for six to eight hours in an eight hour-period" is confusing because "[t]he ALJ never explained *what* [Plaintiff] is capable of sustaining." (Doc. # 10-1 at 11) (emphasis added).

The Court agrees that the quoted limitation is ambiguous, even with context. Although the Court acknowledges that typographical errors in RFCs are typically

13

harmless, in this case, the ambiguity in the RFC and the hypothetical is more than typographical—it infects the substance of the limitation. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011) ("[a] deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case") (internal citations omitted). This ambiguity obscures the ALJ's meaning because the Court cannot ascertain whether appropriate limitations were included in either the RFC or the hypothetical posed to the VE. The ALJ relied on the VE's answer to that hypothetical in determining that Plaintiff is not disabled because a significant number of jobs exist in the national economy that she can perform. (Tr. 22-24). The ambiguities in the RFC and hypothetical are therefore a problem for two reasons—first, because the ALJ bears the burden at Step Five of identifying "jobs in the economy that accommodate [Plaintiff's] residual functional capacity," *see Jones*, 336 F.3d at 474, and second, because the ALJ's determination of no disability must be supported by substantial evidence.

As an initial matter, it is unclear precisely *what* Plaintiff has the "ability to sustain," whether it be concentration, attention, pace, focus, tasks with supervision, tasks without supervision, or something else. (Doc. # 10-1 at 11). The word "but" also creates ambiguity because it is a conjunction that indicates contrast with an earlier statement. *See, e.g.*, https://www.merriam-webster.com/dictionary/but. Here, the phrase before "but" says that Plaintiff has an "ability to sustain for extended periods." (Tr. 65). This is confusing because the phrase following "but"—that Plaintiff can "complete simple tasks for six to eight hours in an eight hour-period . . . across days and weeks"—seems to be in agreement, rather than in contrast, with an "ability to sustain for extended periods." *Id.*

14

This raises questions about what the ALJ meant by Plaintiff's "ability to sustain for extended periods." For instance, the ALJ could have meant that Plaintiff does *not* have the ability to sustain *concentration* on *complicated tasks* for extended periods, but *does* have the ability to complete simple tasks for six to eight hours. Or the error could have been in the ALJ's use of the word "but" itself. Perhaps the ALJ meant to use the word "and" to elaborate on Plaintiff's abilities. These distinctions matter. At the hearing, the VE testified that if Plaintiff "was off task due to a combination of her physical pain as well as her mental limitations 30 percent of the workday," or if she "needed additional supervision to stay on task for the simple repetitive work," she would not be able to perform the jobs the VE mentioned. (Tr. 67-68). As a result, the Court cannot conclude that this ambiguity is harmless.

The Commissioner offers no explanation of the ALJ's meaning, instead pointing out that the ALJ's hypothetical was consistent with the RFC. (Doc. # 12 at 13-14). Indeed, both were ambiguous. The Court could attempt to fill the gap and guess what the ALJ meant, but that is not the Court's role. The Court declines to engage in guesswork regarding the ALJ's intended meaning, or, relatedly, the meaning the VE took from the hypothetical. At bottom, the ambiguous language the ALJ used prevents the Court from considering whether and what mental limitations are included, and therefore prevents the Court from determining whether the RFC is supported by substantial evidence and whether the VE's testimony is reliable.

"[W]hile a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analysis and unresolved conflicts of evidence can serve as a

basis for remand." *Karger*, 414 F. App'x at 749 (internal citations omitted).  In this case, "[w]ithout knowing whether the ALJ found that Plaintiff had non-exertional limitations and what those specific limitations are, the Court cannot determine whether the hypothetical question posed to the VE was necessary, accurate, and/or constituted substantial evidence to support the ALJ's findings" at Step Five.  *Johnson v. Comm'r of Soc. Sec.*, No. 08-13551, 2009 WL 3126319, at *7 (E.D. Mich. Sept. 25, 2009).  For that reason, the Court finds that the ALJ's decision is not supported by substantial evidence.  Therefore, the Court will remand the case so that the ALJ can make a more specific finding regarding Plaintiff's RFC, and proceed to Step Five if necessary.

### III.    CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)    Plaintiff Helen Vonlinger's Motion for Summary Judgment (Doc. # 10) is hereby **GRANTED**;

(2)    Defendant Commissioner's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED**;

(3)    This action is hereby **REMANDED** to the Commissioner under Sentence Four of 42 U.S.C. § 405(g) with instructions to adequately address the specific finding of Plaintiff's RFC and, if necessary, whether significant numbers of jobs exist in the national economy for an individual of claimant's age, education, work experience, and residual functional capacity, consistent with this Memorandum Opinion and Order; and

(4)    A Judgment will be entered contemporaneously herewith.

This 13th day of June, 2017.



Signed By:
*David L. Bunning* DB
United States District Judge

K:\DATA\SocialSecurity\MOOs\Lexington\16-319 Vonlinger MOO.docx